**HELVERING, Commissioner of Internal Revenue, v. SOUTH PENN OIL CO.**

**No. 5708.**

Court of Appeals of the District of Columbia.
Argued March 8, 1933.
Decided Dec. 11, 1933.

G. A. Youngquist, Asst. Atty. Gen., and C. M. Charest, Sewall Key, and Erwin N. Griswold, all of Washington, D. C., for petitioner.

Harold L. Smith, of New York City, for respondent.

Before MARTIN, Chief Justice, and ROBB, HITZ, and GRONER, Associate Justices.

ROBB, Associate Justice.

Petition for review of a decision of the Board of Tax Appeals holding invalid waivers of the statutory period for the assessment of income and profits taxes for 1915 to 1917, inclusive, executed on behalf of dissolved West Virginia corporations after the expiration of the statutory period, where the statutory period had expired subsequent to dissolution (20 B. T. A. 1180).

Respondent, South Penn Oil Company, is a Pennsylvania corporation, organized in 1889. In August, 1917, it acquired all the capital stock of two West Virginia corporations, the Big Creek Development Company and the Yawkey-Freeman Drilling Company, hereinafter referred to, respectively, as the development company and the drilling company. Shortly thereafter the respondent caused all of the assets and property of the development company and the drilling company to be transferred to it in liquidation of the capital stock, the net value of the assets in the case of each corporation being in excess of its liabilities for the taxes herein involved. Subsequently, respondent caused the development company and the drilling company to be dissolved, certificates of dissolution being issued by the secretary of the state of West Virginia in September, 1917.

The officers of the development company were E. E. Crocker, president; S.. G. Hartman, vice president; R. W. Cummins, secretary; and F. C. Leftwich, treasurer; the latter two were also officers of the drilling company, namely, R. W. Cummins, president, and F. C. Leftwich, secretary and treasurer. The board of directors of the development company and the drilling company were identical and included, among others, E. E. Crocker, R. W. Cummins, and S. G. Hartman. Since 1911, S. G. Hartman had been the treasurer and a director of respondent corporation, and on October 8, 1930, was occupying those positions. E. E. Crocker was vice president and a director of respondent corporation from 1906 to 1923.

This review involves the 1915 and 1916 taxes of the development company and the 1917 taxes of the drilling company.

On February 21, 1916, the development company filed its return of income and excess profits taxes for the calendar year 1915; on April 7, 1917, filed its return for 1916. In its return for the calendar year 1917 (filed March 30, 1918), the development company stated that its charter was surrendered in September, 1917.

On March 30, 1918, the drilling company filed its return for the period January 1 to September 30, 1917, and stated that its charter was surrendered in September, 1917.

The statutory period of limitation on the assessment of additional taxes under the above returns, unless extended by waivers, would have expired as follows: for 1915, on February 21, 1921; for 1916, on April 7, 1922; and for 1917, on March 30, 1923 (section 250 (d), Revenue Act of 1921, 42 Stat. 265; section 277 (a), Revenue Act of 1924, 43 Stat. 299, 26 USCA § 1057 note).

The following waivers were submitted by the taxpayers and signed by the Commissioner (section 250 (d), Revenue Act of 1921, c. 136, 42 Stat. 227, 265; section 278 (c), Revenue Act of 1924, 43 Stat. 253, 299 (26 USCA § 1060 note):

On January 2, 1923, the development company, "by S. G. Hartman, vice pres.," filed a waiver consenting to a "determination, assessment, and collection of income and profits taxes" due for the years 1916 and 1917, "irrespective of any period of limitations." This waiver, unlimited in time as to

assessment for 1917, under a departmental ruling promulgated April 11, 1923, expired as to assessment for 1917 on April 1, 1924. Mim. 3085, I.R.Cum.Bull. II—1, p. 174; see Aiken v. Burnet, 282 U. S. 277, note 1 at page 279, 51 S. Ct. 148, 75 L. Ed. 339.

On February 7, 1924, the development company, "by S. G. Hartman," filed a waiver consenting to assessment of taxes due for 1916 and 1917, "said consent to remain in effect for one year after expiration of statutory period of limitation, or the statutory period of limitation as extended by any waivers already on file with the Bureau."

On January 16, 1925, the Commissioner wrote to the development company regarding the assessment of a deficiency in tax for the years 1916 and 1917, stating that the statutory period within which the Commissioner may assess additional taxes for 1916 and 1917 "will expire presently," and, in order to avoid the necessity of making an assessment prior to consideration of information which the taxpayer might submit, requested that forms of waiver which were inclosed be signed. In fact, the statutory periods had already expired.

In response thereto, on January 17, 1925, the development company, "by S. G. Hartman, treasurer," filed a waiver extending the time of assessment of taxes due for 1916, the waiver to be effective until December 31, 1925. Also, in response to the letter addressed to the development company, the drilling company, "by S. G. Hartman, treasurer," on January 17, 1925, filed a waiver extending the time of assessment of taxes due for 1917, the waiver to be effective until December 31, 1925.

On May 9, 1925, the development company, "S. G. Hartman, v. prest.," filed a waiver extending the time of assessment of taxes due for the years 1912 to 1915, inclusive, the waiver to remain in effect until December 31, 1925.

On August 18, 1925, the Commissioner notified the development company of a deficiency, asserting additional income and profits taxes as follows: For 1915, $3,510.55; for 1916, $5,756.16. On the same day the Commissioner notified the drilling company of a deficiency for 1917 of $2,872.88.

On December 24, 1925, the Commissioner made assessment of these additional taxes against the development company and the drilling company, respectively.

On August 27, 1926, the Commissioner mailed a notice of deficiency (60-day letter) to respondent as transferee of the assets of the taxpayer corporations and asserted a liability against respondent for the taxes herein involved, pursuant to section 280 of the Revenue Act of 1926 (c. 27, 44 Stat. 9, 61 [26 USCA § 1069 and note]).

Respondent thereupon filed its petition for redetermination with the Board of Tax Appeals (section 274 (a), Revenue Act of 1926, 44 Stat. 9, 55 [26 USCA § 1048]).

The proceeding before the Board also involved the liability of respondent as transferee of the development company for additional taxes for the year 1917 of over $50,-000. The 1917 return was filed March 30, 1918; assessment of additional taxes would have been barred after March 30, 1923. On January 2, 1923, and February 7, 1924, the development company (then dissolved) filed the waivers above mentioned. Assessment was made on December 24, 1925. On August 27, 1926, notice of deficiency was mailed to respondent asserting a liability against respondent as transferee for the additional taxes for 1917. The Board affirmed the Commissioner in asserting against respondent liability for the 1917 taxes of the development company. In other words, it held that a waiver of the statute of limitations for assessment of taxes executed by a dissolved West Virginia corporation is valid if executed prior to the expiration of the statutory period; and that respondent, as transferee of the assets of the dissolved corporation, is liable for the 1917 taxes of the dissolved corporation. Respondent sought review in this court of this portion of the decision of the Board, but subsequently abandoned its petition.

As to the taxes herein involved, the Board held that under section 59 of chapter 53 of the Code of Laws of West Virginia (chapter 53, § 59, Code 1913 (§ 2891); chapter 53, § 59, Code 1923), providing for the winding up of the affairs of a dissolved corporation, neither the directors nor officers of a dissolved corporation were empowered to waive the defense of the statute of limitations after the expiration of the statutory period, where the statutory period had expired subsequent to dissolution.

That section of the West Virginia statute reads as follows: "When a corporation shall expire or be dissolved, its property and assets shall, under the order and direction of the board of directors then in office, or of the receiver or receivers appointed for the purpose, * * * be subject to the payment of the liabilities of the corporation, and the expenses of winding up its affairs; and the sur-

plus, if any, then remaining, to distribution among the stockholders according to their respective interests. And suits may be brought, continued or defended, the property, real or personal of the corporation be conveyed or transferred under the common seal or otherwise, and all lawful acts be done, in the corporate name, in like manner and with like effect as before such dissolution or expiration; but so far only as shall be necessary or proper for collecting the debts and claims due to the corporation, converting its property and assets into money, prosecuting and protecting its rights, enforcing its liabilities, and paying over and distributing its property and assets, or the proceeds thereof, to those entitled thereto."

In response to the government's contention that a waiver of the statute of limitations for the assessment and collection of taxes executed on behalf of a dissolved West Virginia corporation after the expiration of the statutory period, which occurred subsequent to dissolution, is valid, respondent insists, first, that the Board was correct in holding that under the West Virginia statute the directors and officers of a dissolved corporation are without power to execute a waiver of the statute of limitations after the statutory period for the assessment of taxes had expired.

Respondent in support of its contention cites Parriott v. Edgewood Coal Co., 91 W. Va. 44, 112 S. E. 191, 193, which was a suit by a stockholder against a dissolved corporation and the trustees appointed to administer the assets of the dissolved corporation, to participate in the distribution thereof. The cause was referred by the lower court to a Commissioner for report on, inter alia, what debts were due to two creditors of the corporation. The Commissioner allowed the claims of the creditors, to which the stockholder excepted. The lower court overruled the exception, and on appeal the court said: "The proposition of appellant's counsel is that their [the creditors'] claims were based on open accounts, right of action on which had accrued more than five years prior to the institution of this suit; and that upon their presentation counsel for the corporation and for the trustees were called upon by counsel for plaintiff to say whether they intended to plead the bar of the statute, and being answered in the negative, they interposed the plea and also objected to the evidence and excepted to the report of the commissioner thereon. The record shows that the statute of five years had run against every item in the accounts, not only at the date of the insti-

tution of the present suit, but at the date of the dissolution of the corporation. * * * The corporation and the trustees having declined to plead the statute, and the commissioner on exception by appellant having in effect denied him the right to interpose the same, the question of prime importance is whether he has been denied any right of which he can properly complain either in the circuit court or here on appeal."

In holding that, where the assets of a dissolved corporation have been placed in the hands of liquidating trustees, a stockholder may interpose the statute of limitations or any other defense against the claim of a creditor or other person seeking to participate in the distribution of the assets of the corporation, the court observed: "Here one of the creditors whose debt is attacked was also president of the corporation at the time of its dissolution, and was and is one of the trustees appointed and in charge of the assets. It would seem that there ought to be some one clothed with legal right and authority to protect the rights of stockholders and others against debts doubtful or barred by the statute; and who would or could do this if not a stockholder?"

At common law, and by the rule in the federal courts, dissolution of a corporation abates a litigation in which it is a necessary party whether plaintiff or defendant. Oklahoma Gas Co. v. Oklahoma, 273 U. S. 257, 259, 47 S. Ct. 391, 71 L. Ed. 634. If the corporation is to continue for litigating purposes, it necessary that there should be some statutory authority for the prolongation. Oklahoma Gas Co. v. Oklahoma, supra. Most states, therefore, have enacted statutes permitting dissolved corporations to sue and be sued in connection with winding up the affairs of the corporation. See 47 A. L. R. 1398 et seq. In 1837 the General Assembly of Virginia enacted provisions for the winding up of dissolved corporations.[1] In the Virginia Code of 1849 these provisions were adopted as title 17, c. 56, § 28, reading as follows: "When any corporation shall expire, or be dissolved, or its corporate rights and privileges shall have ceased, all its works and property, and debts due to it, shall be subject to the payment of debts due by it, and then to distribution among the members according to their respective interests; and such corporation may sue and be sued as before, for the purpose of collecting debts due to it, prosecuting rights under previous con-

---

[1] Act of General Assembly of Virginia of Feb. 13, 1837, c. 84, § 14; and Act of March 17, 1837, c. 68, § 6.

tracts with it, and enforcing its liabilities and distributing the proceeds of its works, property and debts among those entitled thereto." This section appears without change in the Virginia Codes of 1860[2] and 1873.[3]

In Hamilton v. Glenn, 85 Va. 901, 9 S. E. 129, 131, the court stated that under this section the corporation, "notwithstanding its death, * * * stands, for the purpose of being sued by creditors, just as it did while live and going, and may sue and be sued as before." In Hawkins v. Glenn, 131 U. S. 319, 9 S. Ct. 739, 743, 33 L. Ed. 184, the same section was under consideration, and the Supreme Court, in concurring with the views of the Virginia court in Hamilton v. Glenn, supra, said: "As the corporation, notwithstanding it may have ceased the prosecution of the objects for which it was organized, could still proceed in the collection of debts, *the enforcement of liabilities,* and the application of its assets to the payment of its creditors, *all corporate powers essential to these ends remained unimpaired.*" (Italics ours.) And in Glenn v. Liggett, 135 U. S. 533, 542, 10 S. Ct. 867, 870, 34 L. Ed. 262, the court reaffirmed its rulings in Hawkins v. Glenn, 131 U. S. 319, 9 S. Ct. 739, 33 L. Ed. 184, stating: "Rules applicable to a going corporation remain applicable, notwithstanding it may have become insolvent and ceased to carry on its operations, where * * * it continues in the possession and exercise of all corporate powers essential to the collection of debts, the enforcement of liabilities, and the application of assets to the payment of creditors."

The Virginia statutes of 1837 above referred to were, without material change, incorporated in the West Virginia Code of 1868 (c. 53, § 59) five years after its admission to the Union. See Miller v. Coal Company, 31 W. Va. 836, 838, 8 S. E. 600, 13 Am. St. Rep. 903. Until 1931[4] this section of the 1868 Code of West Virginia was re-enacted without change in the subsequent Codes of that state (Acts of 1882, c. 96, § 59; amended Code 1884, c. 53, § 59; Code 1887, c. 53, § 59; Code 1913, c. 53, § 59 (§ 2891); Code 1923, c. 53, § 59; see, also, 47 A. L. R. 1529). The object of the statute was "to do away with the unreasonable and inequitable rule of the common law. * * * The statute is remedial in nature and should be given the liberal construction generally applied to such

enactments." Lynchburg Colliery Co. v. Railway Co., 92 W. Va. 144, 147, 114 S. E. 462, 463. The statute provides that "all lawful acts [may] be done, in the corporate name, in like manner and with like effect as before such dissolution or expiration; but so far only as shall be necessary or proper for * * * enforcing its liabilities. * * *" In "enforcing its liabilities," a waiver of the statutory period for the assessment of taxes executed by officers of a going corporation after the expiration of the statutory period of limitations is valid and lawful. Brown & Sons Lumber Co. v. Burnet, 282 U. S. 283, 51 S. Ct. 140, 75 L. Ed. 343; Burnet v. Chicago Railway Equipment Co., 282 U. S. 295, 51 S. Ct. 137, 75 L. Ed. 349. In other words, the power to execute such a waiver "is essential" to enforcing its liabilities. This power, therefore, after dissolution remains unimpaired. Hawkins v. Glenn, 131 U. S. 319, 331, 9 S. Ct. 739, 33 L. Ed. 184. In waiving the bar of the statute which has expired, a going corporation must consider such an act "necessary or proper" in "enforcing its liabilities." So here, the execution of the waivers may be deemed to be "necessary or proper."

Obviously, the interposition of the statutory bar against the ordinary commercial open accounts of the creditors in the Parriott Case benefited the stockholders by making available a larger sum for distribution. A contest between a taxpayer and the federal government over a claim for taxes for a year not barred by the statute may involve computations and items based on returns for years barred by the statute, and, in order that justice may be done the taxpayer and the government as well, the Commissioner in such a case may deem it advisable to consider the tax liability of the taxpayer for the previous years as well as the year in dispute. Very often as a result of the filing of waivers for years barred by the statute, a taxpayer on a complete readjustment of the tax liability is materially benefited by a reduction in taxes for the year in dispute and a determination of overassessment in other years barred by the statute.

In the present case, the 60-day notice of deficiency sent to the development company on August 18, 1925, covered the tax liability of the development company for the years 1913 to 1916, inclusive, and the period ended September 30, 1917, as well as the tax liability of its "affiliated company" (drilling company) for the period ended September 30,

[2] Section 30, c. 56, Code 1860.
[3] Section 31, c. 56, Code 1873.
[4] See section 82, art. 1, c. 31, Code 1931.

1917. In the schedules attached to the deficiency letter, the development company was allowed an overassessment of $754.97 for 1913 and an overassessment of $882.01 for 1914, and additional tax was found due for the years 1915 to 1917, inclusive, and in the same schedules the drilling company was found to owe an additional tax for 1917. Schedule No. 1 stated: "A waiver covering the years 1912 to 1915, inclusive, of the Big Creek Development Company filed on May 9, 1925, and waivers for the years 1916 and 1917 of the Big Creek Development Company and Yawkey-Freeman Drilling Company expire on December 31, 1925. The adjustments shown herein are based on the revenue agent's report dated June 30, 1922, data contained in your briefs of November 7, 1924, and May 15, 1925, and information submitted at a conference in this office, held with representatives of your company on March 16, 1925. * * * A claim for abatement in the amount of $82,834.15 for the year 1917 was filed by the Big Creek Development Company on December 12, 1919. Due consideration has been given the statements contained therein in arriving at the correct tax liability for 1917."

As a result of the claim for abatement for over $82,000 on the 1917 taxes filed by the development company on December 12, 1919, it is apparent that the Commissioner, in order to reach a correct determination, deemed it advisable to consider the tax liability of the taxpayers over the entire period from 1913 to 1917. The adjustments finally made were based on the revenue agent's report dated June 30, 1922. The bar of the statute on assessment for 1917 would have fallen on March 30, 1923, but the taxpayer on January 2, 1923, filed an unlimited waiver of the time for assessment of 1916 and 1917 taxes, and, on February 7, 1924, filed another waiver for 1916 and 1917. These waivers enabled the taxpayer to file the brief of November 7, 1924. On January 17, 1925, the development company filed a waiver for 1916 and the drilling company filed a waiver for 1917, both extending the period of assessment to December 31, 1925. Following the filing of these waivers, the taxpayers, on March 16, 1925, had a conference with the Commissioner regarding tax liability. On May 9, 1925, the development company filed a waiver extending the period of assessment for the years 1912 to 1915, inclusive, to expire on December 31, 1925; and on May 15, 1925, filed another brief with the Commissioner.

In our opinion these waivers were valid.

▮ Respondent next contends that whether the waivers of the dissolved corporations were valid, they were not effective to revive the transferee liability of the South Penn Oil Company. After the expiration of the period of limitation upon the assessment and collection of taxes of the dissolved corporations, their liability was revived by the filing of the waivers. Stange v. United States, 282 U. S. 270, 275, 51 S. Ct. 145, 75 L. Ed. 335. The liability of the dissolved corporations having been effectively revived, the transferee of such corporations assumes the liability since it has received the assets of the corporations. See Phillips v. Commissioner, 283 U. S. 589, 51 S. Ct. 608, 75 L. Ed. 1289.

▮ Respondent further contends that since the waiver of the development company involving the taxes for 1915 and the waiver of the drilling company involving the taxes for 1917 were executed after the passage of the Revenue Act of 1924, the time of assessment of taxes under section 278 (c) of the act (26 USCA § 1062 note), relating to waivers, could not be waived if the bar of the statute had fallen (as here) prior to the passage of the 1924 act. Since the argument in this case, a similar contention was rejected in McDonnell v. United States, 288 U. S. 420, 53 S. Ct. 410, 77 L. Ed. 869.

▮ Respondent also contends that the waiver of the drilling company for the 1917 taxes was invalid because it was executed by the taxpayer in response to a letter from the Commissioner which represented that the period of limitation had not yet expired, although in fact the bar had fallen. In Fleitmann v. Burnet, 62 App. D. C. 90, 65 F. (2d) 178, 179, where waivers were executed under similar circumstances, we held such waivers to be valid, and stated "there is nothing to show that the taxpayer in executing these subsequent waivers was induced or misled by the Commissioner's letter." Nor is there anything in the record in this case which indicates that the taxpayer in executing the waiver was induced or misled by the letter of the Commissioner.

The decision of the Board is reversed.

Reversed.