CONTINENTAL OIL CO. v. UNITED STATES.

No. 42573.

Court of Claims.

May 4, 1936.

This case having been heard by the Court of Claims, the court, upon the report of a commissioner and the evidence, makes the following special findings of fact:

1. The plaintiff, a Delaware corporation, was duly incorporated under the laws of that state as the Marland Oil Company, in October, 1920, changing its name to the Continental Oil Company in the year 1929,

2. The Mutual Oil Company of Arizona was incorporated under the laws of that state in the year 1909.

3. The Mutual Oil Company of Arizona, on August 15, 1919, filed its income and profits tax return for the fiscal year beginning March 1, 1918, and ending February 28, 1919, for itself and the Mutual Refining & Producing Company, an affiliate, with the collector of internal revenue at Kansas City, Mo. The return was signed by O. H. Williams as president and A. Herning as secretary of the Mutual Oil Company of Arizona and disclosed a tax liability for the period of $76,923.91, which amount was promptly paid by the company.

4. The Mutual Oil Company of Arizona, on December 31, 1921, assigned, transferred, conveyed, and released, without consideration, all its assets and property, real, personal, and mixed, to its sole stockholder, the Elk Basin Consolidated Petroleum Company, which company by subsequent changes in name became the Continental Oil Company of Maine. The value of the net assets so transferred by the Mutual Oil Company of Arizona and acquired by the Continental Oil Company of Maine was more than sufficient to pay existing income tax liabilities of the Mutual Oil Company of Arizona.

The Mutual Oil Company of Arizona was duly dissolved by decree of the superior court of Arizona on January 23, 1922.

5. The Commissioner of Internal Revenue, on February 7, 1924, upon audit and review of the tax liability of the Mutual Oil Company of Arizona and its affiliate, mailed to the Mutual Oil Company of Arizona his 30-day letter proposing a deficiency in tax of $21,785.82 for the period involved.

Thereafter, the Mutual Oil Company of Arizona filed with the Commissioner three waivers extending the period for the assessment. The first waiver was signed by O. H. Williams as president of the company, and extended the period for assessment to August 15, 1925. The second waiver, signed by A. Herning as secretary, extended the period for assessment to December 31, 1925, and the third waiver, likewise signed by A. Herning as secretary of the company, extended the period for assessment to December 31, 1926.

6. The Commissioner of Internal Revenue, on December 12, 1925, mailed to the Mutual Oil Company of Arizona a 60-day letter proposing a deficiency of income and profits taxes against that company of $15,779.54 for the period beginning March 1, 1918, and ending on December 31, 1918.

The Mutual Oil Company of Arizona, on February 8, 1926, filed its petition with the United States Board of Tax Appeals for a review of the deficiency in tax set forth in the Commissioner's 60-day letter. The Board, on January 25, 1929, entered its order sustaining the deficiency as determined by the Commissioner of Internal Revenue. Mutual Oil Co. v. Commissioner, 14 B.T.A. 538.

On June 7, 1929, the Mutual Oil Company of Arizona filed its petition with the Circuit Court of Appeals of the Second Circuit seeking a review of the decision of the Board of Tax Appeals. The venue was laid in the Second Circuit Court of Appeals pursuant to a stipulation of the parties. The Circuit Court of Appeals dismissed the petition for a review, on October 1, 1931, for want of jurisdiction to entertain the appeal.

The Commissioner of Internal Revenue, on August 24, 1929, assessed the amount of the aforesaid deficiency, $15,779.54 and interest thereon amounting to $3,310.03, or a total of $19,089.57, against the Mutual Oil Company of Arizona.

7. In June 1929, the plaintiff, then the Marland Oil Company (Delaware), acquired all the assets and property of the Continental Oil Company of Maine, and the right to the use of its name, under the terms of a "plan of reorganization agreement" entered into between the two corporations on April 30, 1929. This agreement among other things provided:

"First. Continental will sell and transfer and Marland will purchase all of the assets and properties and the right to the use of the name of Continental, subject to all liabilities of Continental, which liabilities Marland will assume and agree to pay from and to the extent of the assets so purchased and acquired.

"Second. In payment for the assets of Continental, Marland agrees to issue and deliver to Continental for distribution to its stockholders a number of shares of the no-par-value capital stock of Marland equal to the number of shares issued and now outstanding, namely, two million, three hundred seventeen thousand, two hundred sixty six and 35/100 (2,317,266.35).

"Fifth. Continental Oil Company will consent to the change of name of Marland Oil Company to Continental Oil Company and will render such assistance as may be necessary and desire to permit Marland Oil Company to qualify to do business in the States in which Continental Oil Company is now doing business under that name.

"Seventh. Upon the sale and delivery of assets and properties of Continental and the payment of the consideration therefor, Continental will proceed with reasonable dispatch to liquidate and dissolve and to distribute the stock of Marland to its stockholders entitled thereto.

"Eleventh. Marland will pay and discharge any Federal and/or State income tax liability to which Marland and/or Continental may be subject and will assume and pay all other liabilities which may arise or result from the carrying out of this plan of reorganization and agreement."

8. Pursuant to the foregoing plan of reorganization and agreement the Marland Oil Company increased its capital stock 100 per cent., that is, by 2,317,266.35 shares, which it issued and delivered to the Continental Oil Company (Maine) for distribution to its stockholders in exchange for the assets of the Continental Oil Company (Maine). The approximate market value of the 2,317,266.35 shares of capital stock of Marland Oil Company so issued and delivered was $70,000,000. Thereafter, the Marland Oil Company (Delaware) changed its name to Continental Oil Company (Delaware), the plaintiff in this case.

The assets acquired by the plaintiff from the Continental Oil Company of Maine were more than sufficient to pay the existing liabilities of that company, including deficiency taxes due from the Mutual Oil Company of Arizona.

9. The Commissioner of Internal Revenue, on March 23, 1931, notified the plain-

tiff by a 60-day letter, of a proposed deficiency assessment against it as transferee of the Mutual Oil Company of Arizona, for the taxes due from that company for the period of March 1 to December 31, 1918, both dates inclusive. The plaintiff did not file a petition with the United States Board of Tax Appeals for a review of the Commissioner's deficiency determination, and the Commissioner, on June 13, 1931, assessed the said deficiency against it, with interest thereon, in the amount of $21,662.-22. The assessment was made under section 280 of the Revenue Act of 1926 (44 Stat. 61) and section 311 of the Revenue Act of 1928 (26 U.S.C.A. § 311 and note).

Upon demand and notice, the plaintiff, on June 29, 1931, paid the tax assessed against it.

10. On February 14, 1933, plaintiff filed its claim for the refund of $21,662.22, the amount of the tax assessed against it as transferee of the Mutual Oil Company of Arizona, stating the grounds therefor as follows:

(1) The assessment against Continental Oil Company (Delaware) was improper for the reasons that the Continental Oil Company (Delaware) was not the transferee of the assets of the Mutual Oil Company of Arizona, nor the transferee of a transferee of such assets.

(2) The assessment against and collection from Continental Oil Company (Delaware) was and is barred by the statute of limitations in such cases made and provided.

(3) There was no liability on the part of Mutual Oil Company of Arizona for the reason that if such liability otherwise existed, the assessment and collection were barred by the statute of limitations in such cases made and provided.

(4) There is no liability at law or in equity on the part of Continental Oil Company (Delaware) for any taxes that may have been due from Mutual Oil Company of Arizona.

The Commissioner disallowed the claim for refund on July 26, 1933, and the plaintiff filed its petition herein on December 29, 1933.

11. The liquidation of the Continental Oil Company of Maine had not been completely effected on March 23, 1931, the date on which the Commissioner's 60-day letter was mailed to the plaintiff, and at that time had assets, presumably stock of the plaintiff, sufficient to pay the tax liability of the Mutual Oil Company of Arizona for the period in question, which was subsequently assessed against and paid by the plaintiff.

The plaintiff had no direct dealings with the Mutual Oil Company of Arizona, and that company at no time transferred any of its assets to the plaintiff. It is not shown whether any of the identical assets transferred by the Mutual Oil Company of Arizona to the Continental Oil Company of Maine on December 31, 1921, were included among the assets transferred by that company to the plaintiff on June 30, 1929.

### Conclusion of Law.

Upon the foregoing special findings of fact, which are made a part of the judgment herein, the court decides as a conclusion of law that the plaintiff is not entitled to recover, and therefore the petition is dismissed.

Judgment is rendered against the plaintiff for the cost of printing the record herein, the amount thereof to be entered by him and collected by law.

Arthur B. Hyman, of New York City (James J. Cosgrove and Charles H. Lieb, both of New York City, on the brief), for plaintiff.

Guy Patten, of Washington, D. C., and Frank J. Wideman, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS and WHALEY, Judges.

WILLIAMS, Judge.

The plaintiff, the Continental Oil Company, a Delaware corporation, seeks recovery of $21,662.22, with interest thereon, an amount assessed against it as the alleged transferee of the assets of the Mutual Oil Company of Arizona, for the period March 1, 1918, to December 31, 1918. The assessment was made on June 13, 1931, and, upon notice and demand, was paid by plaintiff on June 29, 1931. Timely claim for refund was filed, which claim was rejected by the Commissioner of Internal Revenue on July 26, 1933. The petition was duly filed on December 29, 1933.

The plaintiff contends:

First. The assessment was barred by the statute of limitations.

Second. There was no liability at law or in equity on the part of the plaintiff for any taxes that may have been due from the Mutual Oil Company of Arizona.

The assessment was made under section 280 of the Revenue Act of 1926 (44 Stat. 61), and section 311 of the Revenue Act of 1928 (26 U.S.C.A. § 311 and note). Section 311 of the 1928 act is a substantial re-enactment of section 280 of the Revenue Act of 1926, which so far as here pertinent reads:

"(a) The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this title. * * *

"(1) The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law). * * *

"(b) The period of limitation for assessment of any such liability of a transferee * * * shall be as follows:

"(1) * * * Within one year after the expiration of the period of limitation for assessment against the taxpayer."

The first question to be determined is the date on which the period of limitation for assessment against the Mutual Oil Company of Arizona expired, as the assessment against the plaintiff as the alleged transferee of the assets of that company was barred unless made within one year thereafter.

The Mutual Oil Company of Arizona filed its income and profits tax return for the fiscal year beginning March 1, 1918, and ending February 28, 1919, on August 15, 1919. The five-year period provided in section 250 (d) of the Revenue Act of 1918, 40 Stat. 1083, for the assessment of taxes on the return expired on August 15, 1924. The Commissioner's 60-day letter notifying the Mutual Oil Company of the proposed deficiency assessment against it for the period involved was issued on December 12, 1925, more than fifteen months after the expiration of the five-year period for assessment. The defendant, however, contends that this period was extended by certain waivers executed by the Mutual Oil Company of Arizona, and that the assessment against the plaintiff as transferee of the assets of that company was timely made under the waivers.

The Mutual Oil Company of Arizona, on December 31, 1921, assigned and transferred, without consideration, all its property and assets to the Elk Basin Consolidated Petroleum Company, which subsequently, through changes in name, became the Continental Oil Company (Maine). The Mutual Oil Company of Arizona was dissolved by the Superior Court of Arizona on January 23, 1922.

The waivers relied on by the defendant were executed by the former secretary of the Mutual Oil Company of Arizona, subsequent to the dissolution of the company, the last one extending the period for assessment until December 31, 1926.

The plaintiff contends that upon dissolution, on January 23, 1922, the Mutual Oil Company of Arizona ceased to exist and could thereafter exercise no corporate function; that its officers became functus officio, without authority to perform any act in the name of the corporation, and that, therefore, the purported waivers executed by the former secretary of the corporation were invalid and void. It further contends that even if the waivers be held valid the assessment against plaintiff as transferee, on June 13, 1931, was not made within a period of one year after the expiration of the period of limitation for assessment against the Mutual Oil Company of Arizona as extended by the waivers.

Paragraph 2108 of the Revised Statutes of Arizona (Civil Code) 1913 reads as follows: "Corporations whose charters expire by their own limitations or by the voluntary act of the stockholders may, nevertheless, continue to act for the purpose of closing up the business of such corporation, but for no other purpose unless renewed as in their charters provided."

Under the provisions of this statute, the Mutual Oil Company of Arizona continued to exist after dissolution for the specific purpose of closing up its business. To the extent necessary to accomplish that purpose its corporate powers remained unimpaired and it could perform in the corporate name any act necessary to that end. Helvering v. South Penn Oil Company, 62 App.D.C. 373, 68 F.(2d) 420. The adjustment of taxes due from the Mutual Oil Company of Arizona was among the things necessary to the closing up of its business. Jaffee v. Commissioner (C.C.A.) 45 F.(2d) 679. The courts and the Board of Tax Appeals, in cases too numerous for citation, have upheld the validity of waivers executed by dissolved corporations during the period in which corporate existence was extended by statutes for the purpose of closing up their business. In these cases the ques-

tion as to the validity of the waiver turned entirely on whether the person signing the waiver had authority to execute it.

■■ The Arizona statutes, unlike the statutes of most of the states, in that respect, make no provision as to who shall act for a dissolved corporation in closing up its business, and the decree of the court dissolving the Mutual Oil Company of Arizona does not designate liquidating trustees. In this situation the only persons who could act on behalf of the dissolved corporation in closing up its business, it still being a going concern for that particular purpose, would be its authorized officials at the date of dissolution. An officer of the corporation who had authority to execute tax waivers on its behalf before dissolution, in the absence of a showing to the contrary, would have like authority to act on its behalf during the period of its extended existence after dissolution for the purpose of closing up the business.

■■ It is not shown that the secretary had express authority to execute income tax waivers on behalf of the Mutual Oil Company of Arizona, nor is it necessary to the validity of the waivers that such showing be made, if it appears from the facts and circumstances of the case that he had the implied authority to execute them. Waivers executed by officers of a corporation under their implied authority are valid. L. J. Christopher Co. v. Commissioner, 60 App. D.C. 368, 55 F.(2d) 530; Philip Carey Mfg. Co. v. Dean (C.C.A.) 58 F.(2d) 737. Officials of a corporation charged with the management of its fiscal affairs, particularly with reference to the making and filing of its income tax returns, have the implied authority to execute waivers in respect to the assessment of additional taxes on the return. Independent Ice & Cold Storage Co. v. Commissioner (C.C.A.) 50 F.(2d) 31. The president and secretary of the Mutual Oil Company of Arizona signed the tax return for the period involved. The prompt payment by the company of the taxes shown to be due on the return was a clear recognition of the regularity of the action of these officials in signing and filing the return, and amounted to a confirmation of their authority in that respect. Being charged with this duty in connection with the company's income tax matters, the president and secretary undoubtedly, nothing to the contrary appearing, had implied authority to execute other necessary papers in relation to the assessment and collection of taxes on

the return, including the statutory waivers usual in such cases. The waivers relied on by the defendant were therefore valid, and operated to extend the statutory period for assessment in accordance with their terms.

■ The deficiency assessment against the Mutual Oil Company of Arizona was made on August 24, 1929. The plaintiff says that the one-year limitation within which the Commissioner could make an assessment against a transferee of that company began to run on that date, and that since the Commissioner's 60-day letter was not mailed to the plaintiff until March 23, 1931, one year and seven months thereafter, the statute of limitations had expired, and assessment against plaintiff, as transferee, was barred. In respect to this contention, it is sufficient to refer to the specific provision of the statutes, that the period of limitation for assessment against a transferee shall be "within one year after the expiration of the period of limitation for assessment against the taxpayer." The timeliness of an assessment against a transferee is in no way dependent on the date on which assessment was made against the taxpayer, it being entirely immaterial whether such assessment was ever made. The requirement of the statutes is met if the Commissioner makes the assessment against a transferee within one year after the expiration of the date on which assessment could have been made against the taxpayer.

The Commissioner's 60-day deficiency notice was mailed to the Mutual Oil Company of Arizona on December 12, 1925. Two unexpired waivers were then on file, one extending the period for assessment to December 31, 1925, the other to December 31, 1926. These waivers were given under section 277 (b) of the Revenue Act of 1924 (43 Stat. 299), which provides: "The period within which an assessment is required to be made by subdivision (a) of this section in respect of any deficiency shall be extended (1) by 60 days if a notice of such deficiency has been mailed to the taxpayer under subdivision (a) of section 274 and no appeal has been filed with the Board of Tax Appeals, or, (2) if an appeal has been filed, then by the number of days between the date of the mailing of such notice and the date of the final decision by the Board."

The taxpayer, within 60 days after the mailing of the deficiency notice filed its appeal from the Commissioner's deficiency determination with the Board of Tax Appeals, and the appeal was pending before the

Board when the Revenue Act of 1926 (44 Stat. 9) was passed. Section 274 (a) of this act (44 Stat. 55) provides: "Within 60 days after such notice [deficiency] is mailed * * * the taxpayer may file a petition with the Board of Tax Appeals for a redetermination of the deficiency. Except as otherwise provided * * * no assessment of a deficiency in respect of the tax imposed by this title and no distraint or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer, nor until the expiration of such 60-day period, nor, if a petition has been filed with the Board, until the decision of the Board has become final."

Section 277 (b), 44 Stat. 58, provides: "The running of the statute of limitations provided in this section or in section 278 on the making of assessments and the beginning of distraint or a proceeding in court for collection, in respect of any deficiency, shall (after the mailing of a notice under subdivision (a) of section 274) be suspended for the period during which the Commissioner is prohibited from making the assessment or beginning distraint or a proceeding in court, and for 60 days thereafter."

Section 283 (b), 44 Stat. 63, provides: "If before the enactment of this Act any person has appealed to the Board of Tax Appeals under subdivision (a) of section 274 of the Revenue Act of 1924, * * * and the appeal is pending before the Board at the time of the enactment of this Act, the Board shall have jurisdiction of the appeal. In all such cases the powers, duties, rights, and privileges of the Commissioner and of the person who has brought the appeal, and the jurisdiction of the Board and of the courts, shall be determined, and the computation of the tax shall be made, in the same manner as provided in subdivision (a) of this section, except. * * * [The exceptions not here material]."

Provision for a judicial review of the decision of the Board of Tax Appeals is provided in section 1001 (44 Stat. 109) as follows:

"(a) The decision of the Board rendered after the enactment of this Act (except as provided in subdivision (j) of section 283 and in subdivision (h) of section 318) may be reviewed by a Circuit Court of Appeals, or the Court of Appeals of the District of Columbia, as hereinafter provided, if a petition for such review is filed by either the Commissioner or the taxpayer within six months after the decision is rendered. * * *

"(c) Despite the provisions of sections 274 and 308, such review shall not operate as a stay of assessment or collection of any portion of the amount of the deficiency determined by the Board unless a petition for review in respect of such portion is filed by the taxpayer, and then only if the taxpayer (1) on or before the time his petition for review is filed (and in any event before the expiration of six months after the decision of the Board is rendered) has filed with the Board a bond in a sum fixed by the Board not exceeding double the amount of the portion of the deficiency in respect of which the petition for review is filed, * * * conditioned upon the payment of the deficiency as finally determined."

In respect to the date on which the Board's decision becomes final, it is provided in section 1005 (44 Stat. 110):

"(1) Upon the expiration of the time allowed for filing a petition for review, if no such petition has been duly filed within such time; or

"(2) Upon the expiration of the time allowed for filing a petition for certiorari, if the decision of the Board has been affirmed or the petition for review dismissed by the Circuit Court of Appeals and no petition for certiorari has been duly filed; or."

█ The Board of Tax Appeals, on January 25, 1929, entered its order sustaining the deficiency as determined by the Commissioner. The taxpayer thereafter, on June 7, 1929, within the six months' period in which it was permitted to do so, filed its petition seeking a review of the Board's decision. This petition, by stipulation of the parties, was filed with the Circuit Court of Appeals of the Second Circuit. The petition was dismissed by that court on October 1, 1931, for want of jurisdiction, the parties having mistakenly laid the venue in the wrong circuit. The taxpayer did not file a bond as required by section 1001 (c) of the Revenue Act of 1926, hence this appeal did not stay the assessment of the deficiency, and the running of the statute of limitations on the Commissioner's authority to make the assessment was not suspended during the period of its pendency before the Circuit Court of Appeals.

█ The Commissioner's 60-day notice was mailed to the taxpayer on December 12, 1925, one year and 19 days before the

expiration of the last waiver on file. The effect of this notice, both under the terms of the waiver and the statute, was to suspend the running of the statute of limitations on the authority of the Commissioner to make the assessment until the decision of the Board of Tax Appeals became final, which in this case, eliminating the time in which the appeal from the Board's decision sustaining the deficiency determination of the Commissioner was pending in the Circuit Court of Appeals, was July 25, 1929, or six months after the entry of the Board's order on January 25, 1929. When there is added to this date the unexpired period of the waiver at the time the deficiency notice was mailed, 12 months and 19 days, the expiration of the period of limitation for assessment against the taxpayer was August 13, 1930. The Commissioner's 60-day letter was mailed to the plaintiff as transferee of the assets of the taxpayer on March 23, 1931, and the assessment against it as transferee was made on June 13, 1931, well within one year after the expiration of the period of limitation for assessment against the taxpayer. Manz Corp. v. United States, 54 F.(2d) 177, 74 Ct.Cl. 5; Hoosac Mills Corp. et al. v. Commissioner (C.C.A.) 75 F.(2d) 462.

The assessment against the plaintiff having been made within the period of limitation in which an assessment could be made against a transferee of the Mutual Oil Company of Arizona, the validity of the assessment turns entirely on whether the plaintiff was liable at law or in equity for the taxes due from that company. The plaintiff contends such liability did not exist.

█ The taxpayer, on December 31, 1921, transferred all its assets of every kind and character to its sole stockholder, the Continental Oil Company of Maine, and soon thereafter dissolved. The transfer was without consideration and the value of the assets transferred was more than sufficient to pay any and all income and profits taxes then due from the taxpayer. The Continental of Maine thus became the transferee of the taxpayer, and as such was liable for the taxes in question. Phillips et al. v. Commissioner, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289. The Board of Tax Appeals in a recent decision (Continental Oil Company v. Commissioner, 34 B.T.A. ——, promulgated March 5, 1936) held that the Continental of Maine was liable in equity as transferee of the assets of the taxpayer, in respect to deficiencies in taxes of that company, for a taxable period other than that here involved. The Commissioner's 60-day notice in that proceeding was issued to the Maine company prior to the transfer of its assets to plaintiff.

With the Continental of Maine liable for the tax in question and having sufficient assets to pay it, plaintiff (then Marland Oil Company), on June 30, 1929, acquired and took over all the assets of that company under a "plan of reorganization agreement" previously entered into between the two companies. The agreement provided: "* * * Marland will purchase all of the assets and properties and the right to the use of the name of Continental, subject to all liabilities of Continental, which liabilities Marland will assume and agree to pay from and to the extent of the assets so purchased and acquired." And that "In payment for the assets of Continental, Marland agrees to issue and deliver to Continental for distribution to its stockholders a number of shares of the no-par-value capital stock of Marland equal to the number of shares issued and now outstanding. * * *"

Immediately following the making of this agreement the Marland Company increased its capital stock by 100 per cent., issuing 2,317,266.35 additional shares at a market value of $70,000,000, which it delivered to the Continental of Maine in exchange for its assets and property as provided in the agreement, and thereupon changed its name from Marland Oil Company (Delaware) to Continental Oil Company (Delaware), the plaintiff herein—as it was authorized to do under the terms of the agreement.

█ The reorganization agreement further provided that "Marland [plaintiff] will pay and discharge any Federal * * * Income tax liability to which Marland and/or Continental may be subject, and will assume and pay all liabilities which may arise or result from the carrying out of this plan of reorganization and agreement." The plaintiff therefore acquired the assets of the Continental of Maine subject to all its liabilities, including federal income taxes, which plaintiff agreed to assume and pay from, and to the extent of the assets so purchased and acquired. One of the subsisting obligations of the Continental of Maine was the payment of the deficiency in income taxes due from the Mutual Oil Company of Arizona, for which it was liable as the transferee of that company. This transferee liability was assumed by plaintiff; the

plaintiff thereby stepped into the shoes of the Continental of Maine as the transferee of the assets of the Mutual Oil Company of Arizona, and became liable at law and in equity for the payment of the deficiency in taxes of that company for the period involved.

It follows from what has been said that the plaintiff is not entitled to recover; consequently the petition must be dismissed. It is so ordered.