WILL T. CASWELL, PETITIONER, ET AL.,[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 82331, 82332, 82333, 82334, 82335, 82336, 82337, 82338, 82339, 82340, 82341, 82342, 82343, 82344.

Promulgated November 4, 1937.

*R. C. Fulbright, Esq.*, for the petitioners.
*E. A. Tonjes, Esq.*, for the respondent.

---

[1] Proceedings of the following petitioners are consolidated herewith: Malcolm H. Reed; Edgar H. Perry; Estate of D. T. Iglehart; Estate of E. J. Byrne; and Estate of C. J. Von Rosenberg.

818

OPINION.

Hill: Petitioners, as stockholders, admittedly received assets of the Elgin Compress Co., the San Marcos Compress Co., and the Capital Compress Co. in excess of the transferee liability determined against them respectively by respondent. So much has been stipulated by the parties. But petitioners assert that they are not liable as transferees, (1) because no additional tax is due from the corporations, and (2) if any additional tax is so due, assessment and collection of their liabilities as transferees are barred by limitations.

Article 1388 of Vernon's Annotated Texas Statutes (Civil) provides that upon the dissolution of a corporation, unless a receiver is appointed by some court of competent jurisdiction, the president and directors or managers of the affairs of the corporation at the time of its dissolution shall be trustees of the creditors and stockholders of such corporation, with power to settle the affairs, collect the outstanding debts, and divide the moneys and other property among the stockholders, after paying the debts due and owing by the corporation at the time of its dissolution. And for this purpose it is provided that the trustees may *in the name of such corporation*

sell, convey, and transfer all real and personal property belonging to the corporation, collect all debts, compromise controversies, maintain and defend judicial proceedings, and exercise full power and authority of the corporation over such assets and property.

Article 1389 of the same statutes provides that the existence of every corporation may be continued for three years after its dissolution from whatever cause, for the purpose of enabling those charged with the duty to settle up its affairs, except that, where a receiver is appointed by a court for this purpose, the existence of the corporation may be continued by the court so long as in its discretion it is necessary suitably to settle the affairs of the corporation.

The corporations here involved were voluntarily dissolved in accordance with the Texas law on July 30, 1927, and thereupon the president and directors assumed charge of the assets and affairs of the corporations as trustees in dissolution. On August 17, 1927, the trustees entered into a contract for the sale of the properties of the corporations, and in the following month the assets were transferred to the vendee. Shortly thereafter the proceeds were distributed among the stockholders.

Petitioners contend that no additional tax is due from the corporations on account of the profit, if any, derived from the sale of the assets subsequent to the dissolution of the corporations; that upon dissolution on July 30, 1927, the legal title to all property belonging to the corporations immediately vested by operation of law in the liquidating trustees, who were trustees for the creditors and stockholders, and that any profit derived from the sale thereafter in September was not the profit of the corporations and hence not taxable to them. No additional tax being due from the corporation, petitioners say they are not liable as transferees. Petitioners' contentions on this point, we think, can not be sustained.

While it is true that the trustees in dissolution were trustees for the creditors and stockholders, it does not follow that they were not also trustees for the corporations and acting in their behalf when they disposed of the corporate assets. The stockholders were the ultimate beneficiaries, after payment of claims of creditors, and in that sense the trustees were acting in a fiduciary capacity for the benefit of the creditors and stockholders. In the same sense, it is often said that the officers and directors of a corporation are trustees for its creditors and stockholders, but nevertheless they manage and direct the affairs of the corporation prior to dissolution, and their acts are the acts of the corporation.

In the instant case the record clearly shows that the liquidating trustees were not only authorized to, but in effect did, directly represent and act in behalf of the corporations in many matters. They were specifically authorized by the statute (1) *in the names of the*

*corporations* to sell, convey and transfer all properties belonging to them, both real and personal; (2) *in the names of the corporations* to collect all debts, compromise controversies, maintain and defend judicial proceedings, and exercise full power and authority of the corporations over .their assets and properties. These things the trustees did, and in doing so, they were acting for and in behalf of the corporations. The parties have stipulated that the *assets of the corporations* were transferred *by the corporations* to the Aransas Compress Co. and in return therefor the stated consideration was *"paid to the San Marcos Company, the Elgin Company and the Capital Company."* The stipulation further recites that "shortly thereafter, within a period of the next three or four months, all of the proceeds from the disposition of the properties were distributed to the stockholders, and thereafter the corporations were entirely without properties or assets of any description."

There being no evidence to contradict the stipulation, we must accept it as correctly stating the facts, and under those facts we can not hold, as petitioners seek to have us do, that the transferred properties belonged to the stockholders at the time of sale, and that they derived the profits resulting therefrom. As we said in *Paraffine Oil Co.*, 28 B. T. A. 207, involving Texas corporations:

> Each petitioner [corporation] conveyed title to the assets sold to the vendees; that was the sale (Cf. *Charles W. Dahlinger*, 20 B. T. A. 176), the transaction producing the asserted gain. The assets of these petitioners [the corporations] were not distributed to or conveyed by their stockholders. The stockholders could cause the conveyance to be made, but they could not make the conveyance. Furthermore, there was no liquidation of either petitioner and we can not ignore the formal corporate acts in making the conveyances, even although the consideration for the conveyance was distributed directly to the petitioners' stockholders. Cf. *E. H. Nielsen Co.*, 26 B. T. A. 223.

But aside from the plainly worded stipulation of the parties above referred to, we can not sustain the contentions of the petitioners that, upon dissolution of the corporations, legal title to their assets vested in the trustees by operation of law, and that any profit realized from .the subsequent sale is taxable to the stockholders. In *Mrs. Grant Smith*, 26 B. T. A. 1178, we said:

> It is well established that the mere dissolution of a corporation does not effect a distribution of its assets among its stockholders, and furthermore that such a distribution is not effected by the turning over of the assets of the corporation to trustees in liquidation who may also be stockholders of the corporation. * * * Until the stockholders actually receive the assets or the proceeds resulting from the sale thereof, there is no receipt by them. [Citing *Wells-Fargo Bank, etc.* v. *Blair*, 26 Fed. (2d) 532.]

The *Smith* case involved a corporation of the State of Washington, but the Washington statutes relating to the dissolution of corporations are substantially the same as the Texas statutes, and the same rule has been applied in the case of Texas corporations.

Article 71 of respondent's Regulations 74, issued under the Revenue Act of 1928, applicable here, reads in material part as follows:

*Gross Income of Corporation in Liquidation.*—When a corporation is dissolved, its affairs are usually wound up by a receiver or trustees in dissolution. The corporate existence is continued for the purpose of liquidating the assets and paying the debts, and such receiver or trustees stand in the stead of the corporation for such purpose. * * * Any sales of property by them are to be treated as if made by the corporation for the purpose of ascertaining the gain or loss. * * *

The same provisions have been embodied in the regulations issued under all other revenue acts from 1918 to 1936, both inclusive. See art. 547, Regulations 45, 1918 Act; art. 22 (a)–21, Regulations 94, 1936 Act.

This regulation has been specifically approved, and the rule announced therein applied, in the following cases: *Taylor Oil & Gas Co.* (a Texas corporation) v. *Commissioner*, 47 Fed. (2d) 108, affirming 15 B. T. A. 609; certiorari denied, 283 U. S. 862; *Burnet* v. *Lexington Ice & Coal Co.*, 62 Fed. (2d) 906; *Hellebush* v. *Commissioner*, 65 Fed. (2d) 902, affirming 24 B. T. A. 660; *Northwest Utilities Securities Corporation* v. *Helvering*, 67 Fed. (2d) 619, affirming 27 B. T. A. 524; *Mrs. Grant Smith, supra.*

In *Taylor Oil & Gas Co.*, the court, after quoting article 547 of Regulations 45, above referred to, said:

This is a reasonable regulation, and should be given effect [citing authorities]. It may be doubted that the contract of sale was merely executory. * * * But, if it was executory, it was still the contract of the company to be executed before there could be any liquidation of its affairs. Conceding for the purpose of argument that the legal title to the property vested in the trustees by the dissolution, no part of the title passed to the stockholders thereby. The real owner was still the company until such time as its affairs were liquidated, the debts paid, and the residue distributed to the stockholders. The profit on the transaction was earned by the corporation, and the assessment of the taxes based thereon was valid.

Petitioners strongly urge that the present proceedings are distinguishable from the cited cases, for the reason that in the latter contracts had been executed, or negotiations entered into, for the sale of the assets prior to dissolution of the corporations. Under the facts here, we think the distinction suggested is without importance. The matters mentioned are of materiality only in determining who was the owner of the property at the time of the sale, and who derived the profit resulting therefrom. In the cases at bar, the corporations owned the property when it was sold and transferred, and hence the gain realized was earned by them.

In support of their contentions petitioners cite, among others, our decisions in *Robert Jemison, Jr.*, 3 B. T. A. 780, and *Fruit Belt Telephone Co.*, 22 B. T. A. 440. In the *Jemison* case the corporation was

dissolved and its assets distributed in kind among the stockholders, who thereafter made the sale. In *Fruit Belt Telephone Co.* the corporation sold, and by formal deed conveyed, its assets to its stockholders for a cash consideration. There was no question of *mala fides*. The property was thereafter sold by the stockholders. In both cases, the stockholders had, in good faith and by lawful transactions, become the legal and equitable owners of the properties of the corporations prior to the sales in controversy. Here no such procedure was followed. We have carefully examined the other decisions cited by petitioners, and find them also not in point.

On the first issue, respondent's action is approved.

The second issue is whether assessment and collection of the liabilities of petitioners as transferees of the taxpayer corporations are barred by limitations. The corporations were dissolved on July 30, 1927, and on October 15, 1927, income tax returns were filed on behalf of the corporations as final returns for the taxable period May 1 to July 30, 1927, and the taxes shown thereon were paid. No returns were filed by or in behalf of the corporations for the fiscal year beginning May 1, 1927, and ended April 30, 1928. Prior to May 1, 1927, the corporations made their tax returns on the basis of a fiscal year ended April 30. No waiver of the statutes of limitations has been executed either by the corporations or by petitioners herein.

On April 12, 1930, respondent made a jeopardy assessment against each of the corporations, covering the period May 1 to July 30, 1927, on the basis of including in gross income for such period profit derived from the sale of the corporate assets subsequent to July 30, 1927. On April 28, 1930, respondent mailed notices of deficiency to the corporations in the respective amounts assessed on April 12, 1930. Notices determining transferee liability were mailed to petitioners on September 6, 1935.

Petitioners contend that the returns filed by the corporations on October 15, 1927, started the running of the statute of limitations in their favor, but that in any event the jeopardy assessments made by respondent on April 12, 1930, put such statute into operation, and therefore the period of limitations on assessment against the corporations expired not later than April 12, 1933. Notices of transferee liability not having been mailed within one year thereafter, petitioners say they came too late.

Upon receipt of the notices of jeopardy assessment above mentioned, the corporations seasonably filed petitions with the Board, and in an opinion reported at 31 B. T. A. 273, 278, we held that the returns filed by the corporations "for the period May 1 to July 30, 1927, were not such returns as are required by the revenue act, and that the deficiencies determined on the basis of such returns and for that period by the respondent were not authorized by law."

Respondent argues that petitioners herein, being stockholders of the corporations, were privy to the former proceedings, and that our decision there as to the sufficiency of the returns of October 15, 1927, and the jeopardy assessments of April 12, 1930, is conclusive of those questions here. On this point, see *Jahncke Service, Inc.*, 20 B. T. A. 837, 847, and authorities cited. Whether or not such rule is applicable here, we need not consider, for the reason that the facts before us in the instant proceedings impel us to the same conclusions.

Section 212 of the Revenue Act of 1926 provides that the net income of individuals shall be computed on the basis of the taxpayer's annual accounting period, fiscal or calendar year, as the case may be, and section 232 provides that the net income of corporations shall be computed on the same basis. Section 41 of the Revenue Act of 1928 is similar. Article 651 of respondent's Regulations 69, under the Revenue Act of 1926, provides that returns of income must be made on or before the fifteenth day of the third month following the close of the fiscal or calendar year, but adds that:

A corporation going into liquidation during any taxable year may upon the completion of such liquidation prepare a return covering its income for the fractional part of the year during which it was engaged in business and may immediately file such return with the collector.

Substantially the same provisions, with additional matter not material here, are contained in article 401 of Regulations 74, under the 1928 Act.

We think it is plain that the returns filed by the corporations on October 15, 1927, for the period May 1 to July 30, 1927, did not cover their fiscal year ended April 30, 1928, nor embrace the period from the beginning of the fiscal year to the completion of liquidation. These returns, therefore, were not the returns required by law, meeting neither the requirements of the statute nor of the regulations. It follows they were insufficient to start the running of the statute of limitations.

The jeopardy assessments were invalid for substantially the same reasons. Respondent is required to compute tax liability upon the basis of the taxpayer's proper taxable year. Yet he determined deficiencies and made jeopardy assessments for the same period covered by the corporations' returns, namely, May 1 to July 30, 1927, which was not the taxpayer's taxable year, or a proper taxable period, and further computed the deficiencies on the basis of income derived subsequent to the close of such period. Even if the period for which the assessments were made had been the proper taxable period, respondent could not lawfully assess a tax for such period based upon income derived thereafter. Since neither the deficiencies so determined nor the jeopardy assessments based thereon were authorized by law, the assessments were null and void, and without legal effect.

In support of their contentions on the issue of limitations, petitioners cite *E. B. Teague*, 32 B. T. A. 641; *American Locker Co.*, 21 B. T. A. 408; and *United States* v. *Updike*, 281 U. S. 489. Those decisions are not controlling here for the reason that they dealt with assessments the validity of which was not questioned. Furthermore in the *Teague* and *American Locker Co.* cases, the taxpayers filed proper returns, which started the applicable periods of limitation running. We held in the latter case, where respondent made a valid jeopardy assessment *after* having mailed a notice of deficiency, the effect of such assessment was to terminate suspension of the running of limitations. And in the *Teague* case, where a valid jeopardy assessment was made *prior* to notice, we held that such notice did not serve to suspend the running of the statute.

Section 276 (a) of the Revenue Act of 1928 provides that in the case of a failure to file a return the tax may be assessed at any time, and subdivision (e) provides that where assessment has been made within the applicable period of limitation collection of the tax may be made within six years thereafter. The same provisions are contained in subdivisions (a) and (d) of section 278 of the 1926 Act.

Where no return is filed and there is no limitation on assessment, even a lawful assessment, which is within time whenever made, has only the effect thereafter of starting the six-year period of limitation on collection. *United States* v. *Updike, supra*. Obviously, the making of a jeopardy assessment has no relation to the period of limitation, if any, on assessment. If there is an applicable period, the making of the jeopardy assessment can neither shorten nor lengthen such period. *E. B. Teague, supra*.

Here, since the returns filed by the taxpayer corporations were not the returns required by law, there was no period of limitation on assessment against them, and the assessments of April 12, 1930, if lawfully made, have no effect other than to put into operation the six-year period of limitation on collection, which period expired on April 12, 1936. But respondent mailed notices to petitioners within that period on September 6, 1935. Collection, therefore, is not barred.

Section 311 (b) (1) of the Revenue Act of 1928 provides a period of limitation for assessment of liability, in the case of an initial transferee, of one year after the expiration of the period of limitation for assessment against the taxpayer. There being no limitation on assessment against the taxpayer corporations in these proceedings, it can not be said that respondent did not mail notices of transferee liability to petitioners "within one year after the expiration of the period of limitation for assessment against the taxpayer."

The one-year period for assessment against the transferee is not measured from the date on which assessment may have been actually made against the taxpayer, whether such assessment was valid or

otherwise; it is to be computed from the date of the expiration of the period of limitation on assessment against the taxpayer. In any event, therefore, the period of limitation on the assessment of the liabilities of petitioners as transferees had not expired when respondent mailed notices to them on September 6, 1935. After the mailing of such notice the running of the statute is suspended until the Board's decision herein shall have become final, and for 60 days thereafter. Sec. 311 (d), Revenue Act of 1928.

On May 17, 1934, respondent mailed deficiency notices to the corporations for the fiscal year ended April 30, 1928, which was the proper taxable period. No appeals to the Board having been taken, the amounts were assessed on September 7, 1934. Petitioners contend that such action of respondent was without legal effect for the reason that the corporations had completely terminated their existence prior to May 17, 1934, when the notices were mailed. However that may be, assessment against a taxpayer is not a prerequisite to assessment and collection of transferee liability, and the period of limitation for assessment against the corporations involved herein remained the same as if their existence had not been terminated. Sec. 311 (c) of the Revenue Act of 1928. Such fact, therefore, does not change the conclusions reached above.

We hold that assessment and collection of the liabilities of petitioners as transferees, in the amounts determined by the respondent, are not barred by limitation.

Reviewed by the Board.

*Judgment will be entered for the respondent.*