ANN C. FIELD, TRANSFEREE, ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 59565–59570, 61244. Filed April 24, 1959.

*F. W. Donovan, Esq.*, for the petitioners.
*Robert B. Pierce, Esq.*, for the respondent.

---

[1] The following proceedings are consolidated herewith: Docket No. 59566, Harry Gold, Transferee; Docket No. 59567, Hal D. Cantin, Transferee; Docket No. 59568, Max Daniels, Deceased, Ethel Daniels, Sole Heir at Law; Docket No. 59569, Samuel J. Baskin, Transferee; Docket No. 59570, Irving Bilton, Transferee; Docket No. 61244, Ethel Daniels, Transferee. All of the petitioners are transferees of Adwood Corporation, except Ethel Daniels who is a transferee of assets of the Estate of Max Daniels, Transferee of Adwood Corporation.

188

190

OPINION.

HARRON, *Judge:* The issue to be decided is whether the statutory notices of transferee liability for tax deficiencies of Adwood Corporation were timely so that assessments of transferee liability are not barred by the statute of limitations. Petitioners concede that they are the transferees of the corporation and that they would be liable for the assessments if they are not barred by the statute of limitations. The value of the property of Adwood received by each petitioner and the amount of each transferee's liability has been stipulated.

Section 311(b) of the 1939 Code [4] provides that the period of limitation for assessment of transferee liability and liability of a transferee of a transferee is within 1 year after the expiration of the period of limitation for assessment against the transferor or the preceding transferee, respectively. All the petitioners are initial transferees of property of Adwood Corporation, the transferor, except Ethel Daniels, who is a transferee of Max Daniels, transferee of property of Adwood. The period of limitation for assessment against a transferor under section 275 [5] is 3 years after the return was filed, except where the Commissioner and the transferor have consented in writing, prior to the expiration of the period prescribed by section 275, to assessment

[4] SEC. 311. TRANSFERRED ASSETS.

(b) PERIOD OF LIMITATION.—The period of limitation for assessment of any such liability of a transferee or fiduciary shall be as follows:

(1) In the case of the liability of an initial transferee of the property of the taxpayer,—within one year after the expiration of the period of limitation for assessment against the taxpayer;

(2) In the case of the liability of a transferee of a transferee of the property of the taxpayer,—within one year after the expiration of the period of limitation for assessment against the preceding transferee, but only if within three years after the expiration of the period of limitation for assessment against the taxpayer;—

except that if before the expiration of the period of limitation for the assessment of the liability of the transferee, a court proceeding for the collection of the tax or liability in respect thereof has been begun against the taxpayer or last preceding transferee, respectively,—then the period of limitation for assessment of the liability of the transferee shall expire one year after the return of execution in the court proceeding.

[5] SEC. 275. PERIOD OF LIMITATION UPON ASSESSMENT AND COLLECTION.

Except as provided in section 276—

(a) GENERAL RULE.—The amount of income taxes imposed by this chapter shall be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period.

after such time. In the event such consent is executed, section 276 (b)[6] provides that the tax may be assessed at any time prior to the expiration of the period agreed upon, and the period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.

After the transferor, Adwood, filed its returns for the taxable years here involved, 1945–1950, inclusive, they were audited by respondent's agents. On December 1, 1950, and March 2, 1951, 30-day letters were sent to Adwood, together with the agents' reports proposing the deficiencies and additional tax liabilities here involved. On December 13, 1950, and March 15, 1951, an authorized officer of Adwood Corporation filed protests taking exception to certain depreciation adjustments. The protests stated that the matter of a proper depreciation basis was already before the court for earlier years (1942–1944, inclusive) and that if the Adwood Corporation failed in that proceeding then adjustments for 1945 to 1950, inclusive, were proper. The protests contained a request that the matter be held in abeyance until the proceeding for the earlier years was settled and indicated that the Adwood Corporation would execute waivers to extend the period for assessment of the liabilities involved.

A series of waivers were executed by authorized officers of Adwood for each of the years here involved and each was executed before the expiration of the prior extended period. For the taxable year ended May 31, 1945, six waivers were executed, the first on January 7, 1948, and the last on November 5, 1952. For the taxable year ended May 31, 1946, five waivers were executed, the first on March 14, 1949, and the last on November 5, 1952. For the taxable year ended May 31, 1947, four waivers were executed, the first on May 23, 1950, and the last on November 5, 1952. For the taxable year ended May 31, 1948, three waivers were executed, the first on February 14, 1951, and the last on November 5, 1952. For the taxable year ended May 31, 1949, two waivers were executed, on December 10, 1951, and on November 5, 1952. For the taxable year ended May 31, 1950, one waiver was executed on November 5, 1952. The last waiver executed for each of the years 1945–1950, inclusive, contained consent to extension of the period for assessment to June 30, 1954.

On April 27, 1951, the Adwood Corporation filed a certificate of dissolution with the Michigan Corporation and Securities Commission. On October 23, 1953, the Adwood Corporation executed Forms

---

6 SEC. 276. SAME—EXCEPTIONS.

(b) WAIVER.—Where before the expiration of the time prescribed in section 275 for the assessment of the tax, both the Commissioner and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.

870, Waivers of Restrictions on Assessments and Collection of Deficiency in Tax and Acceptance of Overassessment, for the taxable years involved and in the amounts here assessed. The district director of internal revenue at Detroit gave notice to the Adwood Corporation of the assessments of the assessed tax liabilities and he demanded payment thereof from Adwood on December 11, 1953, and on January 20, 1954. An offer in compromise on Treasury Form 656 on behalf of Adwood Corporation was filed with the district director on January 13, 1954, and an amended offer in compromise was filed August 19, 1954. On March 30, 1955, notices of Federal tax liens covering assessed tax liability of the transferor, Adwood Corporation, were filed with the register of deeds for Wayne County, Michigan, and with the clerk of the United States District Court in Detroit. On June 23, 1955, statutory notices of transferee liability for deficiencies of the transferor were mailed to all the petitioners, as transferees, except Ethel Daniels to whom a statutory notice of transferee liability for deficiencies, as a transferee of a transferee, was mailed on December 5, 1955.

The petitioners contend first that a transferor may not, by executing a consent, extend the period of limitation during which taxes may be assessed and collected from transferees; that the Code does not authorize the Commissioner to procure the consent of one taxpayer for the purpose of extending the period of limitation as to other taxpayers; and that the consents executed by Adwood had no effect as far as the transferees, the petitioners, are concerned. If the petitioners' theory is correct, since the parties have stipulated that Adwood Corporation's returns were timely filed, the period of limitation against the petitioners, as transferees, would have expired no later than 4 years after the last return of Adwood was due. For the fiscal year ended May 31, 1950, the petitioners contend that the period of limitation relating to the transferees would have expired at least by February 15, 1955.[7]

Under similar facts, this Court has rejected the same contentions. See *W. O. Menger*, 17 B.T.A. 998; *Rite-Way Products, Inc.*, 12 T.C. 475, 479; *Helen Epstein*, 17 T.C. 1034; *Anne Gatto*, 20 T.C. 830; and *James M. Denton*, 21 T.C. 295. See also *Lucas* v. *Hunt*, 45 F. 2d 781; *United States* v. *City of New York*, 134 F. Supp. 374; and *Estate of Umberto Dardi* v. *United States*, 252 F. 2d 670. The rule is that the period of limitation for assessment of liability of an initial transferee and of a transferee of a transferee is within 1 year after the expiration of the original period of limitation for assessment against the transferor and transferee, respectively, *as properly extended by consents of the transferor*. Petitioners have stipulated that all the successive consents referred to above, including the ones executed

---

[7] Section 53(a) of the 1939 Code provides that returns of fiscal year taxpayers are due the 15th day of the third month following the close of the fiscal year. The Commissioner is authorized to grant an extension of up to 6 months.

November 5, 1952, extending the period to June 30, 1954, were executed and delivered by authorized agents of and with the authority of the board of directors of Adwood Corporation. The rule, which is well established, is contrary to petitioners' contention.

The petitioners contend, further, that if the waivers executed by Adwood were valid so that they extended the period of limitation, the extension was terminated when the assessments were made against Adwood Corporation pursuant to the waivers of restrictions on assessments and collections which were executed on October 23, 1953. Assessments were made as of December 11, 1953, and January 20, 1954. Petitioners argue that the period within which the transferees could be assessed runs 1 year from those dates. Petitioners' theory is that waivers (consents) are only for the purpose of allowing the Commissioner additional time within which to assess taxes; the extensions of the period of limitation were terminated when assessments were actually made against Adwood; and the waivers became null and void as soon as the respondent made an assessment. Hence, the petitioners contend, the latest period within which to assess the transferees expired January 20, 1955. The respondent determined deficiencies against the petitioners, as transferees, on June 23, 1955, and on December 5, 1955. Petitioners argue that the determinations of the transferee liabilities were barred.

Petitioners have not cited any authority for these contentions, and we have found none. Petitioners cite Rev. Proc. 57–6, 1957–1 C.B. 729, wherein the Commissioner has set forth the circumstances where waivers (consents) may be employed. Nothing in the ruling supports the petitioners' theory. We long ago rejected such contention. The rule is well established that the 1-year period of assessment against a transferee is not measured from the date at which assessment may have been made against the transferor, but is computed from the date of the expiration of the period of limitation on assessment against the transferor. *Will T. Caswell*, 36 B.T.A. 816, 827, 828; *Continental Oil Co.* v. *United States*, 14 F. Supp. 533, 538, certiorari denied 301 U.S. 694. In these cases, for each of the years involved, a waiver was executed on November 5, 1952, extending the period of limitation to June 30, 1954. The 1-year period of limitation, with respect to the transferees, would, under the rule, begin running from that date.

The chief contention of petitioners is now reached. It relates to the continuance of Adwood Corporation as a body corporate, under Michigan law, for special purposes, and to the effectiveness of the waivers executed by an authorized agent of the board of directors on November 5, 1952, to extend the period of limitation for assessment to June 30, 1954, which date, the petitioners contend, was beyond and after Adwood Corporation ceased to exist under Michigan law.

Although the repetition of various dates is tedious, it is necessary to show clearly what the narrow question before us is under the provisions of section 311(b). The statutory notices of transferee liability for the tax deficiencies of Adwood were mailed to the initial transferees on June 23, 1955. (We need not be concerned about the date of the mailing of the notice to Ethel Daniels, the transferee of an initial transferee, since the timeliness of that notice depends upon the conclusion reached with respect to the basic question of when the period of limitation for assessment against Adwood, the transferor, ended, which, in turn, determines when the period of limitation ended for assessment of the liabilities of the initial transferees.) Under the respondent's view of the facts and the controlling law, the period of limitation for assessment against Adwood ended on June 30, 1954, therefore, under section 311(b)(1), the period of limitation for assessment of the liabilities of the transferees ended on June 30, 1955, and, accordingly, the statutory notices mailed on June 23, 1955, were timely.

On the other hand, it is the theory of the petitioners that under the provisions of section 75 of the General Corporation Law of Michigan, Adwood ceased to be a corporate entity at the expiration of a 3-year period following its dissolution. Petitioners argue that the date of the expiration of the 3-year period was not later than April 27, 1954; that the last series of waivers (consents) executed on November 5, 1952, could not legally extend the period of limitation for assessment of Adwood's liability for taxes beyond April 27, 1954; that such period ended by virtue of the operation of the Michigan statute on (or before) April 27, 1954; that, accordingly, the period of limitation for assessment of the liabilities of the initial transferees ended on (or before) April 27, 1955; and, finally, that the statutory notices of transferee liability mailed on June 23, 1955, were untimely.

Whether or not the statutory notices of liability of the initial transferees were timely depends, therefore, upon whether the last series of waivers executed on November 5, 1952, which purported to extend the period of limitation for assessment of tax deficiencies of Adwood to June 30, 1954, were legally effective to extend such period to that date. The respondent does not dispute the point that the length of the period of time that a corporation continues to exist as a body corporate depends upon the law of the State where the corporation was created, *Title Co.* v. *Wilcox Bldg. Corp.*, 302 U.S. 120, 127; and that if a dissolved corporation is to be continued as a body corporate for special purposes, such as winding up its affairs and concluding any legal proceeding commenced by or against the corporation, "it is necessary that there should be some statutory authority for the prolongation," *Oklahoma Gas Co.* v. *Oklahoma*, 273 U.S. 257, 259. The controversy between the respondent and the petitioners involves interpretation of

the provisions of section 75 of the General Corporation Law of Michigan (cited here for convenience as section 21.75, Mich. Stat. Ann.), under which a dissolved corporation's existence may be continued in the first instance for the further term of 3 years from dissolution, and, in addition, may be continued beyond the prescribed 3-year period under certain conditions for only certain specified purposes.

The ultimate question to be decided relates, therefore, to whether, for the purposes of section 311(b) and section 276(b), the period of limitation for assessment of tax deficiencies against Adwood was extended to either April 27, 1954, or June 30, 1954, and the resolution of that question depends upon whether, under section 75 of the Michigan corporation law, the corporate existence of Adwood extended beyond the primary 3-year period allowed, because of a proceeding commenced by or against Adwood prior to the expiration of the 3-year period.

Before considering these questions, clarification of a date is necessary. The required number of Adwood's stockholders, three-fourths, adopted a resolution on March 27, 1951, to dissolve the corporation pursuant to section 73 of the corporation laws of Michigan, which allows a solvent corporation to dissolve by the vote of at least three-fourths of each class of outstanding stock. Section 73, as amended, provides that within 30 days after any such dissolution a certificate signed by the holders of at least three-fourths of all of the outstanding stock shall be filed with the Michigan Corporation and Securities Commission and with the county clerk, showing that all the debts and liabilities of the corporation have been paid or provision made for the payment thereof. Section 72 provides that upon filing such certificate, the corporation shall be deemed to be dissolved, provided that nothing contained in the Act shall be construed as taking away or prejudicing any right of creditors to pursue any remedy at law given by any law of the State within such period as may be prescribed in the statute of limitations. It has been stipulated that Adwood's stockholders filed the certificate of dissolution on April 27, 1951, with the proper commission. A the trial of these cases, counsel for petitioners seemed to agree that the date of dissolution was April 27, 1951. The parties have proceeded under the understanding that such was the date. However, on brief, petitioners asserted that the corporation was dissolved on April 4, 1951, evidently referring to a stamp on the certificate of dissolution (a copy of which is in evidence) which refers to April 4, 1951, as the date on which dissolution was effective. It is immaterial whether the actual date of dissolution is either one of these dates, but since the petitioners have not seen fit to establish with certainty the precise date, and since the certificate was filed on April 27,

we shall refer hereinafter to April 27, 1951, as the date of dissolution from which the statutory 3-year period, under section 75, began.

Section 21.75, Mich. Stat. Ann., provides as follows:

> 21.75 Dissolved or defunct corporation, continuation for special purposes. Section 75. All corporations whose charters shall have expired by * * * dissolution * * * shall nevertheless continue to be bodies corporate for the further term of three (3) years from such expiration, dissolution * * * for the purpose of prosecuting and defending suits for or against them and of enabling them gradually to settle and close their affairs and to dispose of and convey their property and to divide their assets; but not for the purpose of continuing the business for which such corporations were organized: Provided, That with respect to any action, suit or proceeding begun or commenced by or against the corporation prior to such * * * dissolution * * * and with respect to any action, suit or proceeding begun or commenced by the corporation within three (3) years after the date of such * * * dissolution * * * such corporation shall only for the purpose of such actions, suits or proceedings so begun or commenced be continued a body corporate beyond said three (3) year period and until any judgments, orders or decrees therein shall be fully executed: And provided further, That whenever the number of directors of such a corporation * * * shall at or before the beginning of or during said term of three (3) years by death, resignation or otherwise, be less than the full number of directors required or authorized by statute or the by-laws of such corporation, then and in that event a majority of the remaining, surviving directors or the sole surviving director, shall from time to time, during said period of three (3) years, have all the powers to act for such corporation under this section which are conferred upon or which exist in the board of directors of such corporation before the expiration of its charter or during said term of three (3) years.

Under section 74(1) of the General Corporation Law of Michigan (sec. 21.74(1), Mich. Stat. Ann.), upon the voluntary, or de facto, dissolution of a corporation, the directors then in office and the survivors of them are the trustees of the properties of the corporation in behalf of the creditors and shareholders, respectively, for the purpose of distributing the properties under law to the corporation's creditors and shareholders. For such purpose, a majority of the directors acting as trustees shall have full authority to compromise, adjust, and settle any claims by or against the corporation or its properties, to sell and assign the properties, and to do such other things as may be necessary to permit them to execute their trust. Under section 69, the directors of a corporation in dissolution are given full power to settle, compromise, and pay all claims against the corporation.

In general, under a statute continuing a dissolved corporation for a stated period, such as 3 years, for the purpose of winding up the corporation's affairs, the corporation remains a body corporate for certain purposes; the debts due from and owing to the corporation are not extinguished by dissolution, as at common law; and the directors and their agents have the implied power to do and perform the necessary

acts to carry out the purpose of gradually winding up the affairs of the corporation. Under the General Corporation Law of Michigan the above applies to the status of a dissolved corporation, in general. *Bruun* v. *Cook*, 280 Mich. 484, 273 N.W. 774; *Stott* v. *Stott Realty Co.*, 288 Mich. 35, 284 N.W. 635; *John J. Gamalski Hardware* v. *Baird*, 298 Mich. 662, 299 N.W. 757. See also *Nudelman* v. *Thimbles, Inc.*, 225 Mo. App. 553, 40 S.W. 2d 475, 478. Furthermore, under section 75, a dissolved corporation is not necessarily extinguished at the end of the 3-year period of extended life; but, rather, such corporation shall be continued a body corporate beyond the 3-year period with respect to actions, suits, or proceedings begun by or against the corporation prior to dissolution, and with respect to actions, suits, or proceedings begun by the corporation within the 3-year period, for the purpose of such actions, suits, or proceedings until any judgments, orders, or decrees therein shall be fully executed.

The adjustment and settlement of the liability of Adwood for taxes for its fiscal years 1945 through 1950 were among the things necessary to the closing up of its business. *Continental Oil Co.* v. *United States*, *supra*. Adwood became liable for the taxes involved here during the years when it was functioning under its charter and it was necessary that the total amount of Adwood's liability be ascertained, in order that the assets of Adwood might be followed into the hands of the transferees. The respondent's audits of Adwood's returns for its fiscal years 1945 through 1950 were completed, and the respondent's 30-day letters and the agents' reports of examination of the returns proposing the tax deficiencies here involved were sent to Adwood on December 1, 1950, and March 2, 1951, before the de facto dissolution of Adwood. Adwood's president, who was and continued to be a director of Adwood,[8] filed protests on December 13, 1950, and March 15, 1951. Adwood, by its officers, executed successive waivers (consents) extending the time within which the Commissioner might assess taxes against Adwood on January 7, 1948, March 14, 1949, May 23, 1950, and February 14, 1951, before the dissolution of Adwood. The first waiver was executed before the statute of limitations had run and it extended the period for assessment and collection to June 30, 1949. Prior to June 30, 1949, Adwood's officers executed waivers extending the period for assessment to June 30, 1950. Prior to June 30, 1950, waivers were executed extending the period for assessment to June 30, 1951. Adwood disputed the deficiencies proposed by the respondent prior to its dissolution, and its president requested that the settlement of Adwood's liability for taxes be held in abeyance pending the decision of the Court of Appeals for

---

[8] The directors of Adwood before, at the time of, and after its dissolution were the following: Irving Bilton, Hal D. Cantin, Harry Gold, Samuel Baskin, and Max Daniels.

the Sixth Circuit of its appeal from this Court's decision in *Adwood Corporation*, 15 T.C. 148. While the matter was held in abeyance and immediately following Adwood's de facto dissolution, distribution was made on April 28, 1951, of all of Adwood's assets to its stockholders, without consideration, leaving Adwood insolvent and without assets to apply in discharge of its total liability for Federal taxes.

Under the circumstances reviewed above, the settlement of Adwood's total liability for Federal taxes was indeed one of the chief matters remaining to be taken care of during Adwood's extended corporate life under the provisions of sections 69, 74(1), and 75, as amended, of the General Corporation Law of Michigan.

The initial steps leading up to the assessments of taxes against Adwood were taken prior to its dissolution, and thereafter the matter was continuously pursued by the respondent during the 3-year period of extended life of Adwood. The period of limitation for the assessment and collection of taxes owed by Adwood at no time expired. See sec. 276(b). That is to say, there was no time when a waiver was executed subsequent to the expiration of the extended period of limitation for assessment. During the 3-year period of extended life of Adwood successive waivers were executed, one, on December 10, 1951 (before the end of the period of limitation which had been extended to June 30, 1952), which further extended the period for assessment to June 30, 1953; and another, on November 5, 1952, which further extended the period for assessment to June 30, 1954. The 3-year period of extended life under section 75 of the Michigan statute ended on April 27, 1954, so that the above waivers were executed by a director of Adwood during the 3-year period. Furthermore, during the 3-year period, the following steps were taken by Adwood, through a director, and by the respondent: (1) After the Supreme Court, in 1953, denied certiorari of the decision of the Court of Appeals for the Sixth Circuit in *Adwood Corporation* v. *Commissioner*, 200 F. 2d 552 (Dec. 23, 1952), Bilton, a director, executed for Adwood, and on October 23, 1953, filed, waivers of restrictions on assessments and collection of tax deficiencies, consenting to the assessment and collection of the deficiencies involved here. (2) On December 11, 1953, the district director made assessments of the deficiencies. (3) The district director at Detroit made demands upon Adwood for payment of the deficiencies for the years involved on December 11, 1953, and January 20, 1954, but payment was not made. (4) On January 13, 1954, a director of Adwood filed with the district director an offer in compromise seeking to compromise and settle for a lesser amount the assessed taxes, and submitted a check for $50,295.29 with the offer in compromise, which the respondent still holds. The offer in compromise expressly waived the

benefit of any statute of limitations applicable to the assessment or collection of the liability which Adwood sought to compromise, and in the offer Adwood agreed to the suspension of the running of the period of limitation on assessment or collection of taxes during the time that the offer would be pending, and for 1 year thereafter.

After April 27, 1954, the further steps taken by Adwood and the respondent in respect to Adwood's liability for taxes were as follows: On August 19, 1954, Adwood filed with the district director an amended offer in compromise, which is still pending. On March 30, 1955, the respondent filed notices of Federal tax liens against Adwood with the Wayne County register of deeds and the clerk for the United States District Court in Detroit.

As has been noted above, section 75 of the Michigan corporation statute provides that a dissolved corporation shall continue to be a body corporate beyond the 3-year period of extended life with respect to any "proceeding" commenced by or against the corporation prior to its dissolution, and with respect to any "proceeding" commenced by the corporation within the 3-year period after the date of such dissolution until any orders, or decrees, or judgments therein shall be fully executed. The Michigan statute is remedial, *National Labor Relations Bd.* v. *Timken Silent A. Co.*, 114 F. 2d 449, 450; see also, in general, 16 Fletcher, Cyc. Corps. sec. 8172. The statute should be construed with sufficient liberality to allow the respondent to follow the assets of Adwood into the hands of its stockholders in order to collect the transferor's indebtedness for Federal taxes, which did not cease to exist upon the dissolution of the transferor, just as it should be liberally construed to allow Adwood to collect indebtedness due it, if any, during its winding-up period. 16 Fletcher, *supra* at secs. 8172 and 8173. It is implied in the provisions of the Michigan corporation law, relating to dissolved corporations and their continuance to enable them to gradually settle and close their affairs, that it is a condition precedent to a voluntary, or de facto, dissolution that all debts of the corporation shall have been paid or provision made for the payment thereof. Sec. 73, General Corporation Law of Michigan.

Under such construction of section 75, we think that the waivers of the period of limitation for the assessment and collection of taxes owed by Adwood, the issuance of the 30-day letters, the filing of protests, the filing of waivers of restrictions on assessment and collection of deficiencies, the assessment of the deficiencies, the demands for payment of deficiencies, the filing by Adwood of an offer in compromise and the submission of a check along with the offer, all constituted an integrated administrative proceeding which was a "proceeding" within the meaning of that term in section 75, which was commenced

both by and against Adwood prior to its dissolution, or at least within the 3-year period of extended life. Certainly all of these steps were analogous to a proceeding within the intendment of section 75 of the Michigan statute. See *National Labor Relations Bd.* v. *Timken Silent A. Co., supra; Bahen & Wright, Inc.* v. *Commissioner*, 176 F. 2d 538, 539; *American Standard Watch Co.* v. *Commissioner*, 229 F. 2d 672; *Grand Rapids Brass Co.*, 2 T.C. 1155; and *Gunderson Bros. Engineering Corp.*, 16 T.C. 118. It is our view, therefore, and we conclude, that Adwood continued as a body corporate beyond the 3-year period, i.e., beyond April 27, 1954, and that, therefore, the ending of the 3-year period under section 75 did not abate the proceedings of the respondent and of Adwood to settle Adwood's liability for taxes, did not abate Adwood's indebtedness for Federal taxes, and did not extinguish, or cut off, the extended period of limitation for assessment and collection of Adwood's tax deficiencies as of April 27, 1954. We conclude, also, that the waivers executed on behalf of Adwood on November 5, 1952, were valid, and that they extended the period of limitation to June 30, 1954. It follows that the deficiency notices sent to the initial transferees of Adwood, within 1 year from June 30, 1954, were timely, and that the deficiency notice sent to Ethel Daniels, the transferee of a transferee, on December 5, 1955, was timely. The respondent's determinations are sustained.

Although it is our opinion that the petitioners' contention relating to the status of Adwood during its winding-up period under the provisions of section 75 is without any merit, it is also concluded, under the following authorities, that the directors of Adwood had the power to waive the statute of limitations in pursuance of the adjustment of the liabilities of Adwood for deficiencies in taxes. *United States* v. *Krueger*, 121 F. 2d 842, certiorari denied 314 U.S. 677; *McPherson* v. *Commissioner*, 54 F. 2d 751, 753; *Helvering* v. *South Penn Oil Co.*, 68 F. 2d 420; *Commissioner* v. *Angier Corporation*, 50 F. 2d 887, certiorari denied 284 U.S. 673; *Lucas* v. *Hunt*, 45 F. 2d 781; *United States* v. *Kemp*, 12 F. 2d 7, certiorari denied 273 U.S. 703; *Commissioner* v. *Godfrey*, 50 F. 2d 79; *Helen Epstein*, 17 T.C. 1034; *Aurore B. Benoit*, 25 T.C. 656, 668; *H. D. Walbridge & Co.*, 25 B.T.A. 1109.

Since it is concluded that the statutory notices of transferee liability for the deficiencies of Adwood were timely, it is unnecessary to consider the alternative contention of the respondent that the petitioners are estopped to deny the validity of the successive waivers, and of the waivers of November 5, 1952, and to deny their transferee liability. See, however, *James M. Denton*, 21 T.C. 295; *Aurore B. Benoit, supra;* and *Ruby Y. Lloyd*, 29 B.T.A. 74.

208

Although the determinations of the respondent are sustained, Rule 50 computations are required under stipulations of the parties relating to the respective values of the interests in the assets of Adwood which each petitioner received.

*Decisions will be entered under Rule 50.*