236

ERLE GERARD, PETITIONER, ET AL.,[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 45221, 45265-45267, 45352, 45353, 45359-45363, 45368, 45392, 45393.

Promulgated May 31, 1933.

*John A. Fleming, Esq., George Bouchard, Esq.,* and *C. W. Hobson, Esq.,* for the petitioners.

*J. R. Johnston, Esq.,* for the respondent.

[1] Proceedings of the following petitioners are consolidated herewith : Pearl E. Leeper ; Pearl E. Leeper, Executrix, Estate of Frank E. Leeper, Deceased ; Mrs. Egerton Crispin ; George Zobelein ; Mrs. Edward Zobelein ; Henry O. Feldman ; Edward L. Keeys ; J. E. Harrison ; Earl W. Mueller ; Mrs. S. Streefkerk ; Albert Miller ; Rose L. Carson ; John E. Carson.

OPINION.

'SEAWELL: The record shows that Walter B. Barham owned an oil lease and was required under the terms of his lease to drill a well thereon. In order to raise sufficient money to meet the expense incident to the drilling of the well, he sold interest units or shares in the prospective oil production from the well to be drilled. The purchasers of such interests or interest units were to bear the expense of operation and administration in the same proportion that they were to share in the proceeds from the sale of the oil produced.

After these interests were acquired as stated, the well was drilled, oil was struck, and the well became a producing and paying one. A meeting was held, at which certain of the interest holders, thereafter designated "trustees", represented themselves and other interest holders and carried on the business of Barham Well #1 in a manner similar to directors of a corporation. These aforesaid trustees, the evidence indicates, were elected annually by the interest holders, approved expenditures, made decisions relating to deepening of the well, declared dividends, called meetings of the interest holders, arranged for the sale of Barham Well #1 and advised and recommended to the interest holders its sale to the Olympic Refining Co. on the terms and basis set forth in our findings of fact. Barham Well #1 was not, however, incorporated, had no seal, issued no stock, and had no body always designated "board of directors", though its board of trustees exercised powers and performed duties similar to those discharged by a board of directors of a corporation. The reports which the trustees sent the numerous interest or unit holders informed them of the progress of the project in which they were all interested and advised them of the action taken at the various meetings held in the interest of the unit holders. Such is disclosed in our findings of fact.

The Revenue Act of 1921 provides in part:

SEC. 2. That when used in this Act—

\*      \*      \*      \*      \*      \*      \*

(2) The term "corporation" includes associations, joint-stock companies, and insurance companies.

In Regulations 62 it is stated:

ART. 1502. *Association.*—Associations and joint-stock companies include associations, common law trusts, and organizations by whatever name known, which act or do business in an organized capacity, whether created under and pursuant to State laws, agreements, declarations of trust, or otherwise, the net income of which, if any, is distributed or distributable among the members or shareholders on the basis of the capital stock which each holds or, where there is no capital stock, on the basis of the proportionate share or capital which each has or has invested in the business or property of the organization. \* \* \*

ART. 1504. *Association distinguished from trust.*—\* \* \* If, however, the cestuis que trust have a voice in the conduct of the business of the trust, whether through the right periodically to elect trustees or otherwise, the trust is an association within the meaning of the statute.

The respondent determined Barham Well #1 was, within the meaning of the revenue act and regulations quoted, an association taxable as a corporation.

In the instant case, the record does not disclose any declaration of trust or any trust instrument and the manner in which the active

operations of Barham Well #1 were carried on, in our opinion, brings it within the classification of an association and taxable as a corporation, as determined by the respondent.

In support of their claim that Barham Well #1 was taxable as a trust, the petitioners quote in their brief and rely on subsection (a) of section 704 of the Revenue Act of 1928. That subsection appears to have been enacted to abrogate the retroactive effect of the decision in *Hecht* v. *Malley*, 265 U.S. 144, with respect to trusts that had reasonably relied on the prior interpretation of the law before that decision was promulgated. It had been previously ruled that control by the beneficiaries was essential in order that a trust should be classed as an association. In *Hecht* v. *Malley*, *supra*, it was held that where the trustees are actively carrying on business in quasi-corporate form, the trust is properly classed as an association, regardless of the control vested in the beneficiaries.

In filing its return for 1923 as a trust, Barham Well #1 did not rely on any ruling of the Bureau of Internal Revenue. Its claim to classification as a trust was directly contrary to the position taken by the Bureau, as expressed in article 1504, regulations 62, *supra*, which provides that if the beneficiaries have a voice in the conduct of the business of the trust through the right periodically to elect trustees or otherwise, the trust is an association within the meaning of the statute. The mere filing of a fiduciary return does not under section 704 (a) of the Revenue Act of 1928 entitle a taxpayer to classification as a trust where, as in the present case, under the law and regulations in force when the return was filed and at all times since, the taxpayer was classed as an association for income tax purposes.

Our determination that Barham Well #1 is taxable as an association is in accordance with the principle enunciated in *Black Diamond Oil Trust No. 513*, 25 B.T.A. 142, 146, and in other cases therein cited. The petitioners cite and rely on *Twin Bell Oil Syndicate*, 26 B.T.A. 165, in support of their contention that Barham Well #1 should be considered as a trust and not as an association or corporation. The facts in that case and in the instant proceedings are quite different, so dissimilar that the decision in the former is not applicable and controlling herein. In the former there was in fact a trust; the trustees alone could renew their numbers and could alone alter or amend the trust. The beneficiaries had no voice in such matters and never held a meeting. It was controlled absolutely by the trustees and in this respect bore no resemblance to a corporation which is controlled and directed by its stockholders, acting through directors. The trustees were the real masters of the situation, unchecked by the veto of the holders of the beneficial interest. In the

instant case, the record indicates that the interest holders elected the trustees annually; that the trustees asked " authority " of the interest holders before proceeding in certain matters and did not claim nor exercise absolute control as they did in *Twin Bell Oil Syndicate*, *supra*. As before stated, in our opinion the respondent did not err in considering Barham Well #1 an association, taxable as a corporation within the meaning of the Revenue Act of 1921.

The respondent contends that the transaction through which the Olympic Refining Co. acquired the assets of Barham Well #1 for a consideration of $20,000 was a sale of the assets and not a sale of the units of interest or shares held by the sundry petitioners. It is true that the negotiations leading up to the acquisition of the well by the Olympic Refining Co. were largely carried on through the trustees, who were acting in a sense as a board of directors of the Barham Well #1, but the consummation of the deal was explicitly a purchase of the shares, and from the unit holders. The letter of the Olympic Refining Co. dated February 21, 1927, was addressed, not to Barham Well #1, but to the individual unit holders, and proposed to purchase from them, or such of them as agreed to sell, their shares of interest in the property at $10 per unit. The offer was accepted, and all previous negotiations were thereby merged into the contract thus formed. The shares were taken up from the individuals holding them and the individuals, not the association nor the trustees representing it, were paid therefor. ·This is comparable to the sale by stockholders of a corporation of their individual stock to new stockholders, and cannot be said to be a liquidation of the assets of the association. The transaction was merely a transfer or assignment by the individual unit holders in Barham Well #1 to the Olympic Refining Co. of their interests or right to receive the future profits or dividends, if any, realized from oil production from Barham Well #1. The well thereafter still existed and the evidence fails to show its operation ceased or that the association was insolvent or that there was a liquidation of the association, termed Barham Well #1. So far as this transfer of shares or units of interest to the Olympic Refining Co. is concerned, we hold that the unit holders or shareholders who received the purchase price of their shares from the Olympic Refining Co. were not by reason thereof transferees under section 280 of the Revenue Act of 1926 and liable for the tax assessed against Barham Well #1.

This conclusion is not in conflict with the case of *George M. Brady*, 22 B.T.A. 596, relied on by the respondent. In that case it is said (p. 603) :

\* \* \* As we interpret the evidence it appears to us that the Bank of Hampden sold its assets to the Baltimore Trust Company. The resolutions of the stockholders of the bank are all to this effect, as well as the actual documents of conveyance. The corporation simultaneously with the sale of assets passed resolutions of liquidation which were carried out before the end of the year by its own officers. While it is true that the original offers were made on the basis of a purchase of the shares of stock at $40 per share, as soon as there was an apparent acceptance of the offer the transaction was then placed in the hands of the attorney for the Baltimore Trust Company and from that time on every entry in the minutes of the Bank of Hampden is to the effect that the assets were being sold.

Other differences, if necessary, between the *Brady* case, *supra*, and the case at bar might be pointed out.

In the circumstances detailed in our findings of fact, we are of the opinion, and so hold, that none of the petitioners is a transferee of the association, termed Barham Well #1, within the meaning of the revenue statutes, and there is no liability on the part of any of them as transferees for the tax assessed against said Barham Well #1. This, of course, eliminates the third issue.

Reviewed by the Board.

> *Judgment of no deficiency will be entered in each case.*

TRAMMELL, MURDOCK, GOODRICH, and LEECH concur in the result.